IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Exaeris Inc., et al., | : | Case No. 07-10887(KG) |
| | : | Jointly Administered |
| Debtors | : | |
| _____ | : | **Re: Dkt No. 406** |

## MEMORANDUM OPINION[1]

**BY:   KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE**

### INTRODUCTION

The Debtor, Exaeris, Inc. ("Exaeris" or "Debtor") has filed an expedited motion seeking an order authorizing the sale of substantially all of the assets of Exaeris to Dr. Jack Kachkar ("J. Kachkar") or his designee ("the Sale"), the assumption of designated executory contracts and unexpired leases and the settlement of certain claims between J. Kachkar and Exaeris ("the Motion"). D.I. 406. The Court conducted an evidentiary hearing on the Motion on January 11, 2008 ("the Hearing"). The Official Committee of Unsecured Creditors ("the Committee") took the lead in presenting the Motion, with Debtor's support. The Motion is opposed by Westernbank Puerto Rico ("Westernbank"), a creditor. This is the Court's decision on the Motion which, because of the time limitation explained below, is by necessity brief and to the point.

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.

**THE CASE**

Debtor initiated its Chapter 11 case in this Court on July 2, 2007, together with Inyx USA, Ltd. ("Inyx USA"). Exaeris and Inyx USA are both wholly owned subsidiaries of Inyx, Inc. ("Inyx"), which is a specialty pharmaceutical company and provides manufacturing and development services of both prescription and over-the-counter products. Exaeris, with its principal place of business in Exton, Pennsylvania, is involved in marketing and promotional activities for Inyx and other companies. The Exaeris and Inyx USA cases were jointly administered at the outset of their cases. On August 8, 2007, the Court appointed a Chapter 11 Trustee for Inyx USA with the agreement of parties in interest. On December 6, 2007, on the motion of Westernbank, the Court entered an Order directing that the Exaeris and Inyx USA cases would no longer be jointly administered. D.I. 421.

J. Kachkar provided Exaeris with post petition financing in an amount up to $2.1 million, with interest at the rate of 9.5% per annum on funds actually advanced. The Court entered interim and final orders authorizing J. Kachkar's financing. D.I.'s 43, 122, 168, 195 and 241.

Exaeris is presently not operating, having laid off its employees and discontinued all of its operations except for the eye care business which its wholly owned subsidiary, Exaeris Holdings, Ltd., operates. The Committee, with Debtor's approval, began negotiations with J. Kachkar for the sale of Exaeris to J. Kachkar which resulted in the Asset Purchase Agreement, dated December 17, 2007, between J. Kachkar and Exaeris ("the APA") which is presently before the Court. The essential terms of the APA are as follows:

| | |
|---|---|
| Purchase Price: | Credit bid of the financing J. Kachkar provided (approximately $2.1 million) and a cash payment of $337,500. |
| Purchased Assets: | The Exaeris business, causes of action against King Pharmaceuticals and Dava Pharmaceuticals, claims against Inyx, claims against J. Kachkar, the stock of Exaeris Holdings, Ltd., all cash deposits, all books and records, good will, trademarks, licenses, copyrights and the like, machinery and equipment, inventory, customer lists, trade accounts, and other business operations materials and information. |
| Retained Assets: | Debtor will retain Bankruptcy Code Chapter 5 causes of action, state-law fraudulent transfer actions, setoff against Dava Pharmaceuticals, interests in contracts with King, Dava and Ventiv, the lease for the offices. |
| Assumed Liabilities: | J. Kachkar will assume unpaid administrative expenses and the fees and expenses of the Committee's professionals up to $62,500. |

## RELEVANT FACTS

There are a limited universe of relevant, but critical, facts to the Court's decision and in the short time the Court has to issue its decision, it is both necessary and helpful to bring them to the forefront.

1.     J. Kachkar was both an insider of Exaeris at the commencement of the case[2] and the lender of debtor-in-possession financing.

2.     Exaeris is not an operating business and its estate appears to be administratively insolvent. However, in the year before its bankruptcy, Exaeris generated over $5 million in revenues and has accounts receivable in excess of $2.5 million.

3.     Assuming Debtor's suggestion is correct that the entire cash payment under the APA went to pay claims, and assuming that the claims totaled $5 million – a best case scenario in the extreme – the sale would generate approximately $.06 per dollar of claim. The assumptions mean that none of the cash would be used for professional fees or other administrative expenses and that the amount of claims are less than the Court anticipates. One creditor alone has a claim of approximately $6 million. It is more likely that the Sale will not generate any recovery for creditors.

4.     The "emergency" of the Motion is premised on J. Kachkar's insistence upon a closing deadline less than one month from the APA.

5.     The Committee's financial advisor testified at the Hearing and was unable to provide any valuation of the assets J. Kachkar would purchase under the APA. Neither the Committee nor the Debtor were able to provide the Court with the value of the Exaeris business.

---

[2] At the commencement of the bankruptcy case, J. Kachkar described himself as the chairman of the board and chief executive officer of Inyx which was the sole shareholder of Exaeris. Westernbank took control of Inyx after the commencement of the Exaeris bankruptcy case through a stock pledge and removed J. Kachkar from his management positions. *See Declaration of Jack Kachkar in Support of First Day Motions and Application*, D.I. 15; and 11 U.S.C. s101(43).

6. The Committee's financial advisor was responsible for the marketing of Exaeris in order to attract other interested buyers at an auction. The efforts did not result in any interested purchasers and, more troubling, at the Hearing the financial advisor was unable to name a single person or entity with whom he communicated.

7. The Committee's conclusion that the release of J. Kachkar is fair and reasonable is premised upon an investigation which was not described to the Court and was conducted without discovery, with access to a very small universe of documents, and in the very short and insufficient time dictated by J. Kachkar.

## **DISCUSSION**

At issue is Debtor's sale of all or substantially all of its assets, outside of a plan of reorganization. Such relief is not unusual or inappropriate, but requires a bankruptcy court's careful review. The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there is a sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The element of "good faith" is of particular importance, as the Third Circuit made clear in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) ("...when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser.").

The Debtor and the Committee failed to establish at the Hearing that the Sale satisfies any of the foregoing requirements. The timing, relationship of J. Kachkar to Exaeris, the

proposed release of J. Kachkar, the dearth of evidence of marketing, the absence of any evidence of the value of assets, no evidence whatsoever about the negotiations between J. Kachkar and Debtor or the Committee, require the Court to proceed with extreme caution and applying the facts to the legal standards for the Sale mandates that the Court deny the Motion.

*Sound Business Purpose*

The Committee argues that the Sale satisfies the sound business purpose element because

> . . .if the transaction is not approved, the Debtor's estate is essentially out of money, would not be able to propose a plan and the case would likely be converted to a chapter 7 proceeding.

It is clear that the Committee's analysis of the Debtor's desperate financial condition is likely correct. The problem for the Court is that there is no evidence upon which the Court can make an informed decision on the relationship of the sale price to the value of the assets being sold. Testimony at the Hearing established that J. Kachkar believes the Exaeris business can be revitalized, yet neither the Debtor nor the Committee provided any information on the business's value. Claims against J. Kachkar are being released without a sufficient investigation upon which to determine what claims Exaeris may have against Kachkar. The Court therefore lacks information necessary to determine whether or not the Sale represents a sound business purpose. *See In re Delaware & Hudson Co.*, 124 B.R. at 176.

*Fairness of the Sale Terms*

It is the burden of the proponents of the Sale to establish that the price is fair which would require information on the value of the assets being sold, including the business, claims being released, inventory and the like. Facts are sorely absent other than that the Debtor is in financial extremis. The Court therefore cannot find on the present record that the terms of the Sale are fair.

*Reasonable Notice*

The question this element poses is: was three weeks' notice over the Christmas and New Year holidays sufficient to qualify as reasonable notice? The answer depends on a number of factors, including the exigency of the circumstances and the effort to identify and communicate with potential bidders. The Court recognizes that given the large credit bid that J. Kachkar had to make and the Debtor's financial picture, more time and effort may have proven fruitless. The difficulty, however, does not justify the minimal time allotted or permit the Court to ignore the absence of evidence of the efforts the Debtor and/or the Committee made to identify potential suitors. The only evidence in the record of the identity of potential purchasers who received notice of the Sale are four parties listed on the certificate service of the bidding procedures, pleadings and testimony about a dozen or so entities who received some information. There was no evidence that anyone made any effort to speak with the four parties. The lack of effort in the face of the Court's admonition of its concern with the timing and terms of the Sale is disquieting. Debtor and the Committee cannot fairly be surprised that the Court finds that the notice of the Sale was not reasonable.

*Purchaser's Good Faith*

The purchaser, J. Kachkar, is an insider who has negotiated the terms of the APA including a general release from Exaeris. The Committee's involvement in the negotiations would normally give greater credence to the good faith of the transaction at hand. Here, the Committee did not have sufficient time or information to negotiate with an insider. Ultimately, however, the Motion fails because the Committee did not make a record of what it did in the course of its negotiations. The Committee's financial advisor testified that he spoke on two occasions with J. Kachkar using the very small number of documents J. Kachkar and Debtor provided. Those two conversations occurred after the parties executed the APA. There is no evidence in the record of what negotiations took place which led to the APA. Adding to the Court's concern is that the Debtor's only witness in support of the Sale was Robert M. Carrigan, the general manager of Exaeris who signed the APA on behalf of Exaeris. Mr. Carrigan testified that he did not participate in any negotiations. Mr. Carrigan in fact could not have negotiated for Exaeris given his close relationship with J. Kachkar, which includes alliance with J. Kachkar in a business in Ireland which resulted in the High Court of Ireland's expulsion of both men from their fiduciary positions in that business venture. *See Mitek Holdings Ltd v. Companies Act*, [2005] I.E.H.C. 63. The lack of information provided to the Court about the Committee's investigation of the bona fides of the Sale, the proposed release of J. Kachkar, and the unwarranted lightning schedule preclude a finding of good faith and, indeed, raise concerns that the Sale is not a good faith transaction.

**The Settlement - Release**

The Court's decision to deny the Motion makes it unnecessary to rule upon the settlement with J. Kachkar which would have released him from any liability to Exaeris. The Court notes, however, that the release played a large role in persuading the Court that the proponents of the Motion did not meet their legal burden as defined above. Here, again, the Debtor and the Committee did not establish by even a wide margin that they could or did satisfy the standards for compromises and settlements in bankruptcy cases. The leading cases on the subject are: *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); and *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996), which establish four elements in a court's determination of the fairness of a settlement and compromise, in addition to the "fair and equitable" *sine qua non*. The factors are: (1) the probability of success in the litigation; (2) the difficulties in collecting on a judgment; (3) the complexity of the litigation and the expense and inconvenience of further litigation; and (4) all other relevant factors to a full and fair assessment of the wisdom of the proposed settlement. *See also In re RNI Wind Down Corp.*, 2007 WL 949647, *4 (Bankr. D. Del. March 29, 2007), in which this Court adopted the first three factors and illuminated the fourth factor as "the paramount interest of creditors." It should be abundantly clear that there is simply no record upon which to conclude that the Debtor and the Committee have satisfied the stated requirements. In particular, the testimony and evidence which the parties introduced at the Hearing show that they placed heavy reliance upon information J. Kachkar supplied with little, if any, challenge or corroboration. For example, on the collectability

9

factor, the proponents of the settlement relied upon the personal financial statement that J. Kachkar submitted and confirmed its accuracy by performing a computer search to determine what, if any, other properties J. Kachkar owned in Florida. The proponents did not check for assets in any other jurisdiction because J. Kachkar did not suggest that he owned personal assets elsewhere. Similarly, the Debtor and the Committee did not submit any evidence of their investigation of potential claims Exaeris might have against J. Kachkar making it impossible for the Court to determine the probability of success of litigation against J. Kachkar.

The law is clear that the threshold for approving a settlement is not high. All that is required is that the settlement exceed "the lowest point in the range of reasonableness". *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004), *quoting Official Unsecured Creditors' Comm. of Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.*), 150 B.R. 595, 598 (E.D. Pa. 1992). Once again, the Court is unable to measure the reasonableness of the settlement on the evidence submitted. It is also problematic that J. Kachkar is an insider of Debtor. Whether courts are required to apply a stricter standard when evaluating settlements negotiated by insiders of a debtor is not necessary to decide now. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991) ("We subjected the agreement to closer scrutiny because it was negotiated with an insider, and hold that closer scrutiny of insider agreements should be added to the cook book list of factors that Courts use to determine whether a settlement is fair and reasonable."). What is clear is that a court can and should consider whether an insider

is receiving a release when evaluating the "good faith" criterion. *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 703-04 (Bankr.E.D.Pa. 1989).

Let it be clear that the Court does not fault or level criticism at the Debtor, the Committee or their respective lawyers. They were in the nearly impossible and unenviable positions of trying to accomplish the best they could for their clients, to make something out of nothing. The Court is very satisfied that they did all they could and presented their evidence as advocates should, leaving it to the Court to decide if the relief the Debtor and the Committee seek in the Motion is appropriate . The result is for the Court to determine and in the end the proponents of the Sale did not present sufficient evidence upon which the Court might make the requisite findings.

## CONCLUSION

For the foregoing reasons, the Court is denying the Motion. An Order will issue in conformity with this Memorandum Opinion.

Dated: January 15, 2008

_____
KEVIN GROSS, U.S.B.J.